*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEE ANNE L. SUNDBERG,

     Plaintiff-Appellant,

v

OBERSTAR, INC., and 1900 INDUSTRIAL
PARKWAY, LLC,

     Defendants-Appellees.

UNPUBLISHED
November 12, 2020

No. 350876
Marquette Circuit Court
LC No. 18-056803-NO

Before: SAWYER, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

In this personal-injury action, plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendants. Plaintiff, an invitee in an office building, opened and stepped through an unlocked door and fell from an unguarded precipice into an exposed basement below. The trial court concluded that plaintiff had pleaded claims sounding only in premises liability, and that her action was barred because there was no genuine factual dispute and the hazard was open and obvious and not unreasonably dangerous. We reverse and remand.

## I. BACKGROUND

Defendant Oberstar, Inc. leased an office building owned by defendant 1900 Industrial Parkway, LLC. Plaintiff, Lee Anne L. Sundberg, was a sales representative. On March 16, 2016, plaintiff arrived at Oberstar's office building to arrange a webinar presentation. Before the presentation began, she asked an Oberstar employee where the bathroom was located. The employee pointed in the direction of two doors, and plaintiff opened one of those doors. Plaintiff took a step over the threshold before turning on the light. The room plaintiff entered had no floor: it was used as an accessway into the basement. Plaintiff fell 7 feet, 10 inches onto the cement floor below. After being helped out of the basement, plaintiff was able to start the webinar and sit while the online presentation occurred. Later that day, plaintiff sought medical treatment for injuries that she suffered in her fall. Plaintiff subsequently sued defendants, alleging claims for both ordinary negligence and premises liability.

Defendants moved for summary disposition, arguing that plaintiff's claims sounded only in premises liability, and that the hazard was open and obvious and not unreasonably dangerous. Plaintiff argued that the hazard was not open and obvious, that it was unreasonably dangerous, and that in addition to a premises-liability claim she had presented an ordinary-negligence claim to which the open-and-obvious doctrine did not apply. The trial court granted the motion for summary disposition in favor of defendants under MCR 2.116(C)(10).

This appeal followed.

## II. ANALYSIS

## A. STANDARD OF REVIEW

We review de novo a trial court's grant or denial of a motion for summary disposition. *Wood v Detroit*, 323 Mich App 416, 419; 917 NW2d 709 (2018). Under MCR 2.116(C)(10), summary disposition is appropriate when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When reviewing such a motion, a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). We consider the record evidence itself as well as all reasonable inferences drawn from it. *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996). A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. *Johnson*, 502 Mich at 761.

## B. OPEN AND OBVIOUS

Plaintiff first argues that the trial court erroneously granted summary disposition because a genuine issue of fact existed about whether the hazard was open and obvious. We conclude that a genuine issue of material fact existed regarding the open-and-obvious nature of the hazard in this case, and the trial court erred in granting summary disposition to defendants on this ground.

"To establish a prima facie case of negligence, a plaintiff must prove: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach caused the plaintiff's injuries, and (4) the plaintiff suffered damages." *Kosmalski v St John's Lutheran Church*, 261 Mich App 56, 60; 680 NW2d 50 (2004). "With regard to the first element, the duty owed to a visitor by a landowner depends on whether the visitor is classified as a trespasser, licensee, or invitee." *Id*. In this case, it is undisputed that plaintiff was an invitee, "the class to whom the premises owner owes the *greatest* duty of care." *Hoffner v Lanctoe*, 492 Mich 450, 460 n 8; 821 NW2d 88 (2012). "With regard to invitees, a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Id*. at 460. "Michigan law provides liability for a breach of this duty of ordinary care when the premises possessor knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Id*.

This duty, however, does not require the possessor of the land to protect an invitee from open and obvious dangers. *Id*. at 460-461. This is "because such dangers, by their nature, apprise

an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id*. A danger is open and obvious if "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. at 461. This inquiry requires an examination of the objective nature of the condition. *Id*. This means that the inquiry should "focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff." *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 523-524; 629 NW2d 384 (2001). Because Michigan follows a comparative-negligence framework, whether the plaintiff was also negligent is certainly relevant when calculating the damages the plaintiff may recover. *Id*. at 523. But it is improper to factor in a conclusion that the plaintiff "was walking along without paying proper attention to the circumstances where she was walking," when determining whether a condition was open and obvious. *Id*. (cleaned up).

In this case, the hazard was a significant drop-off hidden behind an unlabeled and closed door in an office building. When this door was closed, the room appeared like any other room in an office, with nothing to indicate the danger behind it. According to defendants, they normally kept the door locked, but on this occasion the door was unlocked. This door opened inward onto a dark room with no overhead light and no floor. Furthermore, the hallway outside the door did not have a light. The light switch within the room operated a light inside the basement: plaintiff felt for this switch as she took a step over the threshold, but by that point she was already falling. There is no dispute that none of defendants' agents warned plaintiff about this hazard, and there was no sign or other indication warning persons present on the premises that the hazard existed.

The trial court ruled that this hazard was open and obvious, concluding that "the crawl space could have been revealed to [plaintiff] had she casually inspected the area before proceeding." The trial court was required to consider whether an average person with ordinary intelligence should have discovered the hazard upon casual inspection—not whether plaintiff could have discovered it if she had been "paying proper attention to the circumstances where she was walking." *Id*. (cleaned up). The trial court was also required to consider all of the evidence in the light most favorable to plaintiff, as the nonmoving party. Based on the record in this case, we conclude that a genuine issue of material fact existed regarding the open-and-obvious nature of the hazard in this case, and the trial court erred in granting defendants' motion for summary disposition.

We pause to note that the trial court here required too much: a hazard is not open and obvious if the danger *could* be revealed upon casual observation; it is open and obvious if the danger *would* have been discovered by an average person upon casual inspection. See *Hoffner*, 492 Mich at 461. The trial court used this "could" language several times, implying that it treated a danger as open and obvious whenever some hypothetical casual inspection could have revealed the danger and prevented a fall, even if most casual inspections would not have revealed it. The trial court had a duty to reach its own legal conclusion about whether the hazard was open and obvious, and it did not err by refusing to simply adopt the expert's conclusion as its own. See *id*. at 476. But by mischaracterizing the expert's opinion in addition to not giving weight to the significant amount of evidence that shed doubt on whether the drop-off truly was open and obvious, the trial court erred. Viewing the evidence in the light most favorable to plaintiff, reasonable minds could disagree about whether the drop-off was open and obvious.

## C. SPECIAL ASPECTS

Plaintiff also argues that the trial court erroneously granted summary disposition to defendants because a genuine issue of fact existed about whether the drop-off was unreasonably dangerous. We conclude that, even if the drop-off was an open and obvious hazard, it presented special aspects that made the risk unreasonably dangerous.

"[A] premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo*, 464 Mich at 517. In *Lugo*, the Michigan Supreme Court gave the example of "an unguarded thirty foot deep pit in the middle of a parking lot" to demonstrate what it meant by an unreasonably dangerous condition. *Id*. at 518. "The condition might well be open and obvious, and one would likely be capable of avoiding the danger. Nevertheless, this situation would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken." *Id*. The *Lugo* Court made clear that such a condition needed more than "some potential" for severe harm; it must "present an extremely high risk of severe harm to an invitee who fails to avoid the risk in circumstances where there is no sensible reason for such an inordinate risk of severe harm to be presented." *Id*. at 518 n 2.

In *Abke v Vandenberg*, 239 Mich App 359, 363; 608 NW2d 73 (2000), the plaintiff fell into a truck bay after closing a heavy sliding door that was eight inches away from the drop-off. This Court held that the proximity of the drop-off and the door, combined with the momentum needed to close the door, raised a question of fact about whether the condition was unreasonably dangerous. *Id*. at 363-364. Similarly, in *Woodbury v Bruckner (On Remand)*, 248 Mich App 684, 686; 650 NW2d 343 (2001), the plaintiff fell from "a second story, unguarded deck" at the apartment she rented from the defendants. The deck "was elevated over nine feet from the ground" but had no railing. *Id*. This Court ruled that the height of the deck and the absence of a guardrail created a genuine issue of material fact about whether the condition was unreasonably dangerous. *Id*. at 694.

The hazard here resembles the hazard we considered in *Abke*. There, we ruled that "the momentum required to close the door would propel one over the edge" of the drop-off located eight inches from the door. *Abke*, 239 Mich App at 363. Likewise, the drop-off here was immediately adjacent to the door, and a single step over the door's threshold was sufficient to cause a person to tumble over the drop-off and into the basement. This presented a question of fact regarding whether the hazard was an unreasonably dangerous condition. *Id*. at 363-364. Meanwhile, the risk presented here resembles the risk we considered in *Woodbury*. The drop-off in this case was 7 feet, 10 inches high, was immediately adjacent to the door's threshold, and was over a cement floor. The door opened inward toward the drop-off. Plaintiff's medical expert concluded that an unexpected fall from that height onto a cement floor presented "a high risk of severe harm and/or death." Charles Oberstar, the president of Oberstar who had authority to speak on behalf of and bind both defendant organizations, testified that the door was supposed to be locked "[s]o nobody would fall down the basement," and he admitted that such a fall was dangerous and could result in death. In *Woodbury*, 248 Mich App at 686, 694, we ruled that a drop-off that was over nine feet, was known to the plaintiff, and led onto the ground presented a

genuine issue of fact regarding whether the drop-off was unreasonably dangerous. The drop-off in this case was not quite as high, yet was completely unknown to plaintiff and ended with a cement floor. Viewing the evidence in the light most favorable to plaintiff, reasonable minds could find that the drop-off was unreasonably dangerous.[1] Because there was a question of fact on whether special aspects existed that made the hazardous condition unreasonably dangerous, the trial court erred in granting summary disposition in favor of defendants.

## D. ORDINARY-NEGLIGENCE CLAIM

Finally, plaintiff argues that the trial court erroneously failed to consider her claim of ordinary negligence. Because plaintiff alleged a claim arising from the conduct of Oberstar's employee, we conclude that the trial court erred in concluding that plaintiff's claims sounded solely in premises liability.

Negligence claims based on a defendant's conduct are distinct from premises-liability claims. *Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005). "[A]n injured person may pursue a claim in ordinary negligence for the overt acts of a premises owner on his or her premises." *Kachudas v Invaders Self Auto Wash, Inc*, 486 Mich 913, 914; 781 NW2d 806 (2010).

In this case, plaintiff alleged an ordinary-negligence claim, in addition to her premises-liability claim. Plaintiff based the ordinary-negligence claim on the actions and inactions of Oberstar's employee after plaintiff asked where the bathroom was located. Plaintiff alleges that this employee acted negligently by directing her toward the drop-off and by not interceding when the employee saw plaintiff headed toward peril. The trial court ruled that "a plaintiff injured by a dangerous condition on the land is limited solely to a premises liability claim." The key issue is not whether the plaintiff ends up hurt by a hazardous condition on the premises, but instead whether the injury is tied to some additional conduct by the defendant. See *Laier*, 266 Mich App at 493, 497. The ordinary-negligence claim here is based on conduct: plaintiff ties her claim to the behavior of defendant's employee moments before the fall, and not merely to the existence of the hazard on the premises. The trial court therefore erred by treating plaintiff's claims as sounding solely in premises liability and subject to an open-and-obvious defense.[2]

---

[1] The evidence of subsequent-remedial measures that plaintiff attempted to present in this case would not be admissible before the trier of fact. See MRE 407. Therefore, we do not consider that evidence in our analysis of this issue.

[2] We express no opinion regarding whether plaintiff presented sufficient evidence to create a genuine issue of material fact regarding her ordinary-negligence claim. The trial court did not consider or rule on this issue, stating only that "a plaintiff injured by a dangerous condition on the land is limited solely to a premises liability claim." On remand, the trial court may give further consideration to the adequacy of plaintiff's proofs on this issue.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.  Plaintiff, having prevailed in full, may tax costs under MCR 7.219(F).


/s/ David H. Sawyer
/s/ Michael J. Kelly
/s/ Brock A. Swartzle