*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

FRANCESCA THOMAS,

      Plaintiff-Appellant,

UNPUBLISHED
February 9, 2023

v

No. 361529
Macomb Circuit Court
LC No. 2020-003316-NO

CITY OF WARREN,

      Defendant,

and

KANE REAL ESTATE INVESTMENTS 2 LLC,

      Defendant-Appellee.

Before: M. J. KELLY, P.J., and BOONSTRA and SWARTZLE, JJ.

BOONSTRA, J. (dissenting).

I respectfully dissent. I would affirm the trial court's well-reasoned opinion granting defendant's[1] motion for summary disposition under MCR 2.116(C)(10), on the ground that the alleged hazard was open and obvious. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001).

The parties agree, as plaintiff admitted in her deposition testimony, that the lip on which she stubbed her toe–where the driveway meets the sidewalk—is clearly visible during the daytime.[2] However, plaintiff argues that the lip's open-and-obvious nature was obviated by

---

[1] By "defendant," I mean defendant Kane Real Estate Investments 2 LLC, which owned and leased the single-family residence in the city of Warren that plaintiff was visiting at the time of the incident in question.

[2] Plaintiff testified that she arrived at the residence in question at approximately 8:00 p.m. on the evening of June 20, 2020, and that it was light out at that time. The tenant whom plaintiff was visiting testified, by contrast, that plaintiff arrived "late in the evening, maybe nine, eight, nine, it

-1-

nightfall and by what she now contends was inadequate lighting as of the time she departed the home around midnight on June 20, 2020. In that regard, plaintiff acknowledges that a landlord "doesn't have to supply lighting," but contends that a landlord is obliged to do so if it does not fix an otherwise-obvious hazard.

In that regard, I am compelled to note that, although the claimed inadequate lighting of the area has become the centerpiece of plaintiff's claim, plaintiff's complaint contains not one iota of allegation of any inadequacy of lighting. Moreover, and while I agree that the parties could have done more to develop the record—one way or another—as to the degree to which the various, available sources of lighting illuminated the area in question, the record reflects that those available sources of illumination included (a) a streetlight on the property in question; (b) an available front porch light and side porch light; and (c) shrubbery lighting; and (d) lighting on the garage. The record further reflects—and plaintiff agrees—that although defendant supplied various sources of lighting for the use of its tenant and the tenant's social guests (including plaintiff), neither plaintiff nor the tenant turned on the porch light when plaintiff departed the residence around midnight on the date in question.[3]

As the trial court noted, Michigan courts have held that the danger of tripping on uneven pavement or steps is generally an open and obvious one, absent special aspects. See, e.g., *Betrand v Alan Ford, Inc*, 449 Mich 606, 616; 537 NW2d 185 (1995) (describing uneven pavement as an "everyday occurrence"); *Weakley v City of Dearborn Hts*, 240 Mich App 382, 385; 612 NW2d 428 (2000) (noting that "steps and differing floor levels, such as . . . uneven pavement . . . are not ordinarily actionable *unless* unique circumstances surrounding the area in issue made the situation unreasonably dangerous") (citation and quotation marks omitted, emphasis in original). And while this Court has held that, under some circumstances, darkness can preclude the application of the open and obvious doctrine, the cases cited in support of doing so in this case, *Abke v Vandenberg*, 239 Mich App 359; 608 NW2d 73 (2000), and *Knight v Gulf & Western Props, Inc*, 196 Mich App 119, 126; 492 NW2d 761 (1992), are distinguishable. *Abke* and *Knight* involved plaintiffs unexpectedly encountering darkened interior rooms with unexpected drop-offs; such a factual situation is far different from a mere common tripping hazard being obscured by typical and expected nighttime darkness. See *Weakley*, 240 Mich App at 385. Moreover, inadequate lighting may itself constitute an open and obvious condition. See *Singerman v Muni Serv Bureau, Inc*, 455

---

was late," and that "it was already dark when she arrived." Sunset occurred in Warren, Michigan at 9:14 p.m. on June 20, 2020. See, e.g., http://www.suntoday.org/sunrise-sunset/2020/june/20.html.

[3] The tenant initially testified that plaintiff exited through the front door of the house and traversed a walkway from the front porch to the driveway; she then testified that plaintiff "probably" left via the side door and then traversed the driveway from there. Plaintiff testified that she exited from the side door. Either way, the record reflects that both the front door and the side door were equipped with porch lights, and the garage (which was located behind the side door) was equipped with additional lighting. Regardless of which door plaintiff used to exit the home, the record reflects that no one illuminated the porch light located at that exit; the record remains unclear whether the other porch light, the garage lights, or the shrubbery lighting were illuminated at the time of the incident.

Mich 135, 141l 565 NW2d 383 (1997) (noting that there was "nothing unusual about the inadequate lighting" at issue and that "[t]here was nothing to prevent plaintiff from realizing that the [area] was inadequately lighted").

I would hold that there is similarly nothing unusual about a portion of a residential driveway being dark at nighttime. Moreover, as noted, there was a nearby streetlight and other lighting supplied by defendant, including porchlights that neither plaintiff nor the tenant turned on as plaintiff was leaving the home. The home inspections and tenant checklists provided to the lower court make no mention of any non-functioning exterior lighting. In other words, plaintiff, having perceived that the driveway was dark, could have simply asked (or expected) her friend to turn on the available porchlights or to have otherwise provided illumination of the area; failing that, she could have taken a different route to her car, such as the one she took—across the lawn— upon arriving at the home that day.

Under these circumstances, I would hold that the alleged hazard was open and obvious. The lip of the driveway was open and obvious during the day, and the un-pleaded darkness that plaintiff now contends rendered it undiscoverable upon casual inspection was itself an open and obvious condition. *Lugo*, 464 Mich at 516. I note also that plaintiff, in her own deposition testimony, indicated that she was able to see the pavement of the driveway while walking on it before her fall and that there was nothing blocking her view, and further made very unclear statements regarding whether she was even looking where she was walking. Plaintiff also admitted that she had visited the residence on at least one earlier occasion; in her testimony regarding that earlier visit, she inconsistently asserted both that she walked "on the grass" and that she walked "close to the grass on the driveway" (which would have taken her across the very lip on which she later stubbed her toe). The tenant similarly testified that there was enough light for her to see where she was walking on the night in question. Therefore, I would conclude that plaintiff has not established a genuine issue of material fact that the alleged hazard was not discoverable on casual inspection. *Rubin*, 249 Mich App at 238.

The above is sufficient to warrant affirming the trial court. But I additionally note that while the record shows that both defendant and the tenant were aware of the driveway lip, defendant appears to have provided working outdoor lighting, the operation of which was under the control of the tenant, as is typical with respect to leased single-family residence homes. The lease agreement specifies that the tenant is, in any event, in charge of replacing light bulbs. The tenant admitted in her deposition that she had not turned on the available lighting. To the extent that the lip of the driveway was a dangerous condition on the land, it is difficult to see how it can be shown that defendant breached its duty concerning that hazard when exterior lighting provided by defendant was not used to illuminate it. *Lugo*, 464 Mich at 516. I consequently conclude that plaintiff has failed to demonstrate a genuine issue of material fact concerning any breach of defendant's duty to her.[4] *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 693; 822 NW2d 254 (2012).

---

[4] The trial court noted that it was undisputed that plaintiff was an invitee. Yet, it is also undisputed that plaintiff was a social guest of the tenant. Generally, social guests are licensees, not invitees.

For these reasons, I respectfully dissent and would affirm the trial court's order granting summary disposition in favor of defendant.

/s/ Mark T. Boonstra

---

See *Taylor v Laban*, 241 Mich App 449, 453; 616 NW2d 229 (2000). There is indeed caselaw supporting a conclusion that social guests of tenants in institutional settings are invitees when they are injured in common areas over which a landlord retains control. See *Allison v AEW Capital Mgmt, LLP*, 481 Mich 419, 427; 751 NW2d 8 (2008). But it is far from clear to me that the same is necessarily true with regard to a single-family residence, or that a landlord retains sufficient control over the driveway of such a residence (as opposed, for example, to a common parking lot in an apartment complex) such that it can be deemed to be a common area; there was no indication that defendant in this case, for example, controlled who could use the driveway, the number and size of vehicles that could be parked there, the security of the area, or many other factors deemed relevant in *Allison*. *Id.* at 428. Although neither the trial court nor the parties in this case have addressed whether plaintiff properly should be considered an invitee or a licensee, I would encourage them to do so on remand.